UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGES-LUCIEN DE RATAFIA, <br><br>                    Plaintiff, <br><br> v. <br><br> CITY OF NEW YORK, <br> NYPD DET. RANDY MERCADO, <br><br>                    Defendants. | Case No. 18-CV-2322 <br><br> **COMPLAINT** <br><br> **ECF CASE** <br><br> **JURY DEMANDED** |

COMES NOW THE PLAINTIFF, Georges-Lucien de Ratafia, by his attorney, Steven M. Warshawsky, for his complaint against the defendants, City of New York and NYPD Det. Randy Mercado, and alleging upon personal knowledge and information and belief as follows:

### NATURE OF THE CASE

1. Plaintiff Georges-Lucien de Ratafia ("De Ratafia") was the victim of a false police report made to the New York City Police Department ("NYPD") by his former brother-in-law who was seeking revenge against De Ratafia after De Ratafia confronted him for inappropriately touching De Ratafia's adult daughter (and the brother-in-law's niece).  Upon information and belief, the brother-in-law has since fled the country to avoid possible criminal and civil prosecution.

2. Based on this false police report, De Ratafia, who was 66 years old at the time with a variety of serious health conditions, was arrested by NYPD officers, on the authority of NYPD Det. Randy Mercado.  There was no probable cause for De Ratafia's arrest.  No arrest warrant was obtained before arresting De Ratafia in his home.  Based on the wording of the false police report, which was nonsensical on its face, no reasonable

1

police officer would have believed there was probable cause to arrest De Ratafia for any crime without conducting some investigation into the nature and veracity of the accusations against him.  Det. Mercado failed to conduct any investigation in this case.

3. This is a civil rights action under 42 U.S.C. § 1983 and New York state law arising from De Ratafia's arrest on June 2, 2017, by Det. Mercado, without probable cause or other legal justification.  Because a reasonable police officer in Det. Mercado's position would have known that his actions violated De Ratafia's clearly established rights – the right to be free from arrest without probable cause – Det. Mercado is not entitled to qualified immunity.

4. By this action, De Ratafia is demanding compensatory damages for the harms he has suffered as a result of the defendant's unlawful conduct, punitive damages to punish and deter the defendant from engaging in similar unlawful conduct in the future, attorney's fees and costs, and all available legal and equitable relief.

## JURY TRIAL

5. Pursuant to Fed. R. Civ. P. 38, the plaintiff demands a trial by jury on all issues so triable.

## PARTIES

6. Plaintiff **Georges-Lucien de Ratafia** is an adult citizen of New York and resides in New York, New York.

7. Defendant **City of New York** is a municipality of the State of New York. The NYC Corporation Counsel is Zachary Carter.  The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007.  The New York City Police Department is an agency or instrumentality of the City of New York.  The City of New York is being sued under New York state law, pursuant to the doctrine of respondeat

superior, for the unlawful conduct of the police officers involved in this case who were acting within the scope of their employment with the NYPD.  No claim is made against the City of New York in its municipal capacity under  42 U.S.C. § 1983, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny.

8. Defendant **NYPD Det. Randy Mercado** is an employee of the New York City Police Department.  Upon information and belief, his shield number is 2505 (possibly 2605).  Upon information and belief, his place of business is the NYPD 17th Precinct located at 151 East 51st Street, New York, NY 10022; (212) 826-3211.  Det. Mercado personally participated in the unlawful conduct alleged herein.  At all relevant times, Det. Mercado was acting under color of state law and in the scope of his employment with the NYPD.  Det. Mercado is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

10. This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

11. This Court is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

12. There are no administrative exhaustion requirements for bringing the present civil action under 42 U.S.C. § 1983.

13. The plaintiff has satisfied the administrative exhaustion requirements for bringing the present civil action under New York state law. De Ratafia served a valid "notice of claim" pursuant to N.Y. Gen. Mun. Law § 50-e on the New York City Comptroller's Office within 90 days of the incident. A 50-h hearing was conducted by the City on December 13, 2017. To date, the City has neglected or refused to settle this matter administratively. This civil action is being filed within one year and 90 days of the incident.

## FACTUAL ALLEGATIONS

14. On or about May 26, 2017, De Ratafia's former brother-in-law, Joseph Inoa, walked into the NYPD 17th Precinct stationhouse and filed a false police report against De Ratafia, with whom Inoa was living at the time. The report was assigned NYPD Complaint #2017-017-01907. Upon information and belief, the report was taken by P.O. Sharipov and Sgt. Mehaj. Upon information and belief, the report was not taken by Det. Mercado.

15. Upon information and belief, after filing the false police report, Inoa fled the country, to Medellin, Columbia.

16. According to the NYPD Complaint, Inoa told the police as follows: "C/V [complainant/victim] states that his roommate did touch his daughter in appropriately [sic]. His daughter is 32 YO and lives on her own. C/V states that his roommate perp [perpetrator] and his daughter want $50,000 USC or they will file a police report for sex abuse."

17. In other words, Inoa accused De Ratafia [his roommate] of inappropriately touching Inoa's daughter, and then claimed that De Ratafia and Inoa's daughter threatened to report Inoa to the police for "sex abuse" unless he paid them $50,000. This is nonsensical on its face. Why would Inoa's daughter accuse her own father of sex abuse when Inoa alleged that De Ratafia was the one who touched her inappropriately? Any reasonable police officer would have doubted the veracity and credibility of Inoa's complaint. Any reasonable police officer would have known that further investigation was required before arresting De Ratafia.

18. Inoa's statement also is factually incorrect. It was Inoa who inappropriately touched De Ratafia's daughter, not the other way around. When De Ratafia confronted Inoa about his gross misconduct, Inoa made up this story about being threatened with a police report unless he paid De Ratafia and his daughter $50,000. De Ratafia absolutely denies making any such threats to Inoa.

19. Upon information and belief, Det. Mercado did not meet with or interview Inoa about the alleged incident. There is no indication in the police records for this case that Det. Mercado ever met with or interviewed Inoa.

20. Upon information and belief, no police officers attempted to contact and interview the daughter involved (whether believed to be Inoa's or De Ratafia's) before arresting Dr Ratafia. There is no indication in the police records of any such efforts.

21. No police officer contacted and interviewed De Ratafia's daughter about the incident.

22. No police officer contacted and interviewed De Ratafia about the incident.

23. There is no indication in the police records that the police officers attempted to obtain any other evidence relating to the incident. In fact, there is no such evidence, because the incident as reported to the police did not occur.

24. Notwithstanding the facial implausibility of Inoa's complaint and the lack of any corroborating witnesses or evidence, De Ratafia was charged with attempted grand larceny, by means of extortion, in the second degree, N.Y. Penal Law § 155.40. He was not charged with any type of sex offense or battery.

25. No arrest warrant was obtained for De Ratafia.

26. Upon information and belief, Inoa's complaint was referred to the 17th Precinct Detective Squad, which included Det. Mercado.

27. Upon information and belief, the case was assigned to Det. Mercado, who made the decision to arrest De Ratafia based on Inoa's complaint.

28. The subsequent events in this case took place on June 2, 2017. Around 6:00 a.m. that morning, De Ratafia was sleeping in his son's apartment on East 55th Street in Manhattan, where De Ratafia was living at the time. This was the apartment where Inoa previously was living with De Ratafia.

29. De Ratafia awoke that morning to a loud banging on the door to the apartment, which he answered. Three men in plain clothes were standing at the door and identified themselves as NYPD officers. Upon information and belief, these were members of the NYPD Warrant Squad, and they had been directed by Det. Mercado to arrest De Ratafia. De Ratafia does not know their names or badge numbers.

30. The officers entered the entryway of the apartment, without requesting or obtaining consent. The officers falsely advised De Ratafia that they had a warrant for his arrest. The officers demanded that he get dressed and go with them. When De Ratafia asked why he was being arrested, they did not answer. They did not show him a copy of the alleged arrest warrant. When De Ratafia asked what would happen if he refused, they told him that they would taser him and drag him out of the apartment.

31. There was no probable cause for the officers' arrest of De Ratafia.

32. The officers had no legal right to enter De Ratafia's apartment.

33. The officers had no legal right to threaten De Ratafia with bodily harm.

34. Although having no idea why he was being arrested, De Ratafia complied with the officers' commands and got dressed. He was handcuffed behind his back and escorted outside the building to an unmarked police car.

35. The officers drove around New York City for approximately three hours, with De Ratafia handcuffed in the backseat, while they attempted to locate another suspect they intended to arrest that day. During the drive, De Ratafia experienced significant physical pain, including neck and back pain due to multiple herniated discs, and emotional distress due to anxiety and uncertainty regarding his legal situation.

36. Eventually De Ratafia was taken to the 17th Precinct, where he placed in a holding cell. He remained in the holding cell for approximately two hours. While in the holding cell, he was advised by one of the officers at the precinct that he was being charged with misdemeanor larceny, but he was not told for what.

37. At some point, De Ratafia was taken from the holding cell to an interrogation room, where he was interviewed by Det. Mercado for about 30 minutes. Det. Mercado asked De Ratafia whether anything had occurred on a certain date [the date of the incident between Inoa and De Ratafia's daughter], and De Ratafia explained to him that Inoa had touched De Ratafia's daughter inappropriately, greatly upsetting her. However, Det. Mercado never advised De Ratafia that Inoa had accused De Ratafia of molesting Inoa's daughter or making any kind of extortionate threat. Det. Mercado never gave De Ratafia an opportunity to deny these false and malicious accusations. Det. Mercado also asked about Inoa's whereabouts (indicating that he had not been able to contact Inoa and interview him about the case). De Ratafia suggested Inoa may have been with his girlfriend in Queens or may fled the country to Medellin, Columbia.

38. At the end of the interview, Det. Mercado told De Ratafia that he was going to be taken to Central Booking downtown. De Ratafia told Det. Mercado that he needed to contact his son and obtain his medications that he takes every morning. Det. Mercado advised De Ratafia not to make an issue of his medications, otherwise he would have to be taken to Bellevue Hospital to be cleared medically, which would prolong his detention before arraignment.

39. De Ratafia then was transported to Central Booking, processed, and placed into a crowded holding cell. He remained in Central Booking for approximately 12 hours. During his time in custody, De Ratafia experienced difficulty breathing (without access to his emergency inhaler), angina (without access to his heart medications), and neck and back pain (from multiple herniated discs), as well as significant anxiety and fear that he might have a heart attack and die in the jail.

40. De Ratafia was not arraigned. The District Attorney's Office dismissed the charge against De Ratafia prior to criminal court arraignment, "[b]ecause the New York Police Department is unable to locate the complaining witness." De Ratafia was released from custody around 11:00 p.m.

41. In total, De Ratafia was in police custody for approximately 17 hours.

42. As a result of the defendant's unlawful conduct, De Ratafia suffered loss of liberty, physical pain and suffering (from being handcuffed, confined in a police car, and confined in jail cells), emotional pain and suffering, and other pecuniary and non-pecuniary injuries, for which he is entitled to an award of compensatory damages.

## CLAIMS AGAINST CITY OF NEW YORK

43. The City of New York is vicariously liable under New York state law, pursuant to the doctrine of respondent superior, for the unlawful conduct of Det. Mercado, who was acting within the scope of his employment with the NYPD, as alleged herein.

## CLAIMS AGAINST DET. RANDY MERCADO

44. Based on the factual allegations set forth above, along with reasonable inferences drawn in the plaintiff's favor, Det. Randy Mercado is liable to the plaintiff under federal and state law, as follows:

45. Count One: false arrest, in violation of the Fourth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983, based on the lack of probable cause for the plaintiff's arrest;

46. Count Two: false arrest, in violation of the Fourth Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983, based on having the plaintiff arrested inside his home without a warrant;

47. Count Three: false arrest, in violation of New York state law, based on the lack of probable cause for the plaintiff's arrest. The City of New York is vicariously liable for this violation.

48. Count Four: battery, in violation of New York state law, for handcuffing the plaintiff during the course of an invalid arrest. The City of New York is vicariously liable for this violation.

49. Det. Mercado is not entitled to qualified immunity for any of these violations. In each instance, the plaintiff's federal and state law rights were clearly established and were known or should have been known to Det. Mercado. In each instance, it was not

reasonable for De. Mercado to believe his actions did not violate the plaintiff's federal and state law rights.

50. In each instance, Det. Mercado acted with intentional, knowing, callous, and/or reckless indifference to the plaintiff's federal and state law rights.

51. As a result of Det. Mercado's unlawful conduct, De Ratafia suffered loss of liberty, physical pain and suffering (from being handcuffed, confined in a police car, and confined in jail cells), emotional pain and suffering, and other pecuniary and non-pecuniary injuries, for which he is entitled to an award of compensatory damages.

52. De Ratafia is entitled to an award of punitive damages to punish Det. Mercado for his unlawful conduct and to deter him from engaging in similar unlawful conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment against the defendants and requests the Court grant the following relief:

A. A judgment declaring that Defendant Mercado is liable for violating the plaintiff's federal and state law rights, as alleged herein;

B. A judgment declaring that the City of New York is vicariously liable for the police officers' violations of the plaintiff's state law rights, as alleged herein;

C. An award of compensatory damages in an amount no less than $25,000 (against all defendants) for the plaintiff's lost liberty;

D. An award of compensatory damages in an amount no less than $25,000 (against all defendants) for the plaintiff's physical pain and suffering;

E. An award of compensatory damages in an amount no less than $25,000 (against all defendants) for the plaintiff's emotional pain and suffering;

F. An award of punitive damages in an amount no less than $75,000 (against Defendant Mercado);

G. Pre-judgment and post-judgment interest as allowed by law;

10

H. Attorney's fees, costs, and disbursements as allowed by law; and

I. All other relief that the plaintiff may be entitled to under law, or as justice may require.

Dated:   March 15, 2018
         New York, NY

                                          Respectfully submitted,

                                          *Steven M. Warshawsky*

By:   _____
        STEVEN M. WARSHAWSKY (SW 5431)
        The Warshawsky Law Firm
        Empire State Building
        350 Fifth Avenue, 59th Floor
        New York, NY  10118
        Tel:  (212) 601-1980
        Fax:  (212) 601-2610
        Email:  smw@warshawskylawfirm.com
        Website:  www.warshawskylawfirm.com